Turner, J.
 

 The questions presented are whether it was error for the Court of Common Pleas to refuse to order the appellee corporations and their registrars and transfer agents, (1) to transfer the shares of stock in question to appellant, (2) to issue him new certificates therefor, or (3) to pay him the accrued dividends thereon. If the trial court did not so err then the judgment of the Court of Appeals affirming the decree of the trial court should be affirmed.
 

 We shall resist the temptation which this case holds to delve into the extensive bibliography on the subjects of transfer and issuance of corporate shares and stock certificates and the rights to dividends, being content to call attention to the fact that some confusion exists by reason of the failure to observe the line of demarcation between those
 
 certificates
 
 of stock, the transfer of which is governed by the Uniform Stock Transfer Act, and
 
 shares
 
 of stock, the transfer of which is not subject to the act. As the act is not effective in all states, and not applicable to all certificates in states where effective, text and decided cases must be examined to determine whether the case arose under or independently of the act.
 

 Whether the Uniform Stock Transfer Act is, as claimed by some, a mere codification of the prior law or whether it is a code of new law need not disturb us —certain it is that in Ohio the transfers of certificates of corporate stock subject to the act are governed by
 
 *272
 
 .the act and such statutory enactments are to be read in the same way and interpreted and construed when necessary in the same manner as other statutory en.actments.
 

 Section 8673-22 (1), General Code, provides that:
 

 “ ‘Certificate.’ means a certificate of stock in a corporation organized under the laws of this state or of .another state whose laws are consistent with this act. ’ ’
 

 Section 23 of the Uniform Stock Transfer Act (102 Ohio Laws, 505) provides:
 

 ‘ ‘ The provisions of this act apply only to certificates issued after the taking effect of this act.”
 

 While Section 24,
 
 ibid,
 
 provides:
 

 “This act shall take effect on the first day of July, ■one thousand nine hundred and eleven.”
 

 Checking the record we find that all of the corporate appellees are Ohio corporations and that all certificates in .question were issued since. July 1, 1911.
 

 Under the Uniform Stock Transfer Act, a stock certificate has become something more than mere evidence ■of title. The title to the certificate and the shares represented thereby can be transferred only by delivery •of the certificate duly endorsed or accompanied by a written assignment or power of attorney to assign. (Sections 8673-1 and 8673-10, General Code.)
 

 Neither attachment nor levy may now be made unless the outstanding certificate be actually seized, or the transfer enjoined. (Section 8673-13 and 8673-14, General Code.)
 

 While some authorities admit only “quasi-negotiabilitv”
 
 (Peckinpaugh
 
 v.
 
 Noble & Co.,
 
 238 Mich., 464, 213 N. W., 859, 52 A. L. R., 941;
 
 Jackson
 
 v.
 
 Peerless Portland Cement Co.,
 
 238 Mich., 476, 213 N. W., 863;
 
 Edgerly
 
 v.
 
 First National Bank of Boston,
 
 292 Mass., 181, 184, 197 N. E., 518; 18 Corpus Juris Secundum, 919, Sections 389, 390; 12 Fletcher Cyclopedia Corporations, 463, Section 5542.), the weight of authority
 
 *273
 
 holds that Section 5 of the act (Section 8673-5, General Code) gives full negotiability to the certificates of stock covered by the act. 10 Ohio Jurisprudence, 288, Section 195; commissioner’s note in 6 Uniform Laws Ann., 10;
 
 Edmund Wright-Ginsberg Co., Inc.
 
 v.
 
 Carlisle Ribbon Mills,
 
 105 N. J. Eq., 411, 148 A., 178;
 
 American Surety Co. of New York
 
 v.
 
 Cunningham,
 
 200 Minn., 566, 574, 275 N. W., 1, 112 A. L. R., 892; 13 American Jurisprudence, 404, Section 326, page 417, Section 345, and page 419, Section 346; Ballantine’s Manual of Corporation Law and Practice, 473.
 

 Section 8673-1, General Code, provides:
 

 “Title to a certificate and to the shares represented thereby can be transferred only,
 

 “(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or
 

 “(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to be specified person.
 

 '“The provisions of this section shall be applicable although the charter or articles of incorporation or code of regulations or by-laws of the corporation issuing the certificate and the certificate itself, provide that the shares represented thereby shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent.”
 

 Section 8673-4, General Code, provides:
 

 “The title of a transferee of a certificate under a power of attorney or assignment not written upon the
 
 *274
 
 ■certificate, and the title of any person claiming under such transferee, shall cease and determine if, at any time prior to the surrender of the certificate to the •corporation issuing it, another person, for value in good faith, and without notice of the prior transfer, shall purchase and obtain delivery of such certificate with the indorsement of the person appearing by the ■certificate to be the owner thereof, or shall purchase .and obtain delivery of such certificate and the written .assignment or power of attorney of such person, though •contained in a separate document.”
 

 Section 8673-5, General Code, provides:
 

 “The delivery of a certificate to transfer title in .accordance with the provisions of section 1 [Section •8673-1, General Code], is effectual, except as-provided in section 7 [Section 8673-7, General Code], though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title.”
 

 Section 8673-6, General Code, provides:
 

 “The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual, except as provided in section 7 [Section 8673-7, General Code], though the indorser or transferer,
 

 “ (a) Was induced by fraud, duress or mistake, to make the indorsement or delivery, or
 

 “(b) Has revoked , the delivery of the certificate, •or the authority given by the indorsement or delivery of the certificate, or
 

 “(c) Has died or become legally incapacitated after the indorsement whether before or after the delivery of the certificate, or
 

 “(d) Has received no consideration.”
 

 Section 8673-8, General Code, provides:
 

 “Although the transfer of a certificate or of shares represented thereby has been rescinded or set aside,
 
 *275
 
 nevertheless, if the transferee has possession of the ■certificate or of a new certificate representing part or the whole of the same shares of stock, a subsequent transfer of such certificate by the transferee, mediately or immediately, to a purchaser for value in good faith, without notice of any facts making the transfer wrongful, shall give such purchaser an indefeasible right to the certificate and the shares represented thereby.”
 

 Section 8673-22 (2) provides:
 

 “A thing ‘is done in good faith’ within the meaning ■of this act, when it is in fact done honestly, whether it be done negligently or not.”
 

 The record in this case fails to disclose that any of the certificates have been lost or destroyed. On the •contrary it is agreed among counsel that the certificates .are still in existence. Therefore, recourse may not be had to the provisions of Section 8673-17,.General Code, which provides that upon satisfactory proof of loss or ■destruction and upon giving bond the court may order the issuance of a new certificate. (See, also, Section ■8623-30a, General Code.) Attention is called to the •following provision of Section 8673-17, General Code:
 

 “The issue of a new certificate under an order of the court as provided in this section, shall not relieve the corporation from liability in damages to a person to whom the original certificate has been or shall be transferred for value without notice of the proceedings or of the issuance of the new certificate.” (See, .also, Sections 8623-30a and 8623-12, General Code.)
 

 Section 8673-13, General Code, contains the following provision:
 

 “ * * * Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old cer■tificate is surrendered to it.”
 

 
 *276
 
 Notwithstanding this clear language of Section 8673-13, General Code, appellant seems to assume that in case of an attachment or levy where the certificate has not been surrendered to the corporation but the transfer by the holder has been enjoined, the corporation must issue a new certificate, which, of course, is contrary to the provision of the statute. The case of
 
 Elgart
 
 v. Mintz, 123 N. J. Eq., 404, 197 A., 747, cited by appellant, does not so hold. See
 
 Luks
 
 v. Luks, 106 N. J. Eq., 160, 150 A., 346.
 

 Counsel for appellant make the following statement:
 

 “Counsél for the appellant herein wishes to state to the court that at the commencement of this brief that neither counsel for plaintiff nor any of the various counsels for the defendants herein have been able to find a case in the United States directly in point nor any case assuming to decide the question in issue.” We might add that our independent search has likewise failed.
 

 As stated in the syllabus in
 
 Peckinpaugh
 
 v.
 
 Noble & Co., supra:
 

 “12. The Uniform Stock Transfer Act is all inclusive and admits of no exception, even including theft or felonious taking from the owner, in protecting the rights of a good-faith purchaser of stock indorsed in blank by the owner.” (However, some other courts do. not agree as to theft. As to theft, see Section 8623-30a, General Code, and 12 Fletcher Cyclopedia Corporations, 466.)
 

 The test of the correctness of the decree below depends upon whether any relief may be afforded appellant under Section 8673-18, General Code, which provides:
 

 “In any case not provided for by this act, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, executors, administrators and trustees, and
 
 *277
 
 to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating causes, shall govern.”
 

 Our inquiry then must be directed to the various provisions of the act to determine whether relief in the in.stant case is provided for by the act. Attention has been called to the provision of Section 8673-1, General ■Code, to the effect that title to. a certificate and the .shares represented thereby can be transferred only by •delivery of the certificate.
 

 Section 8673-7, General Code, provides:
 

 “If the indorsement or delivery of a certificate,
 

 “(a) Was procured by fraud or duress, or
 

 “(b) Was made under such mistake as to make ■the indorsement or delivery inequitable; or
 

 “If the delivery of a certificate was made :
 

 “(c) Without authority from the owner, or
 

 “(d) After the owner’s death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded, unless :
 

 “ (1) The certificate has been transferred to a purchaser for value in good faith without notice of any facts making the transfer wrongful, or
 

 “(2) The injured person has elected to waive the injury, or has been guilty of laches in endeavoring to •enforce his rights.
 

 “Any court of appropriate jurisdiction may enforce ■specifically such right to reclaim the possession of the •certificate or to rescind the transfer thereof and, pending litigation, may enjoin the further transfer of the •certificate or impound it.”
 

 Unless we are willing, which we are not, to acknowledge the futility of the processes of court, the foregoing section provides full and complete relief to appellant which appellant may secure in case No. 71087 in the Court of Common Pleas of Stark county wherein Margaret C. Shutz was found not only to
 
 *278
 
 possess the certificates in question but to have obtained them by fraud and duress. The fact that the trial court in case No. 71087 released Mrs. Shutz from confinement without compliance with the orders of the court is not a sufficient foundation for the instant case. She m.ay still be compelled to surrender the certificates.
 

 , In addition to the provisions of the Uniform Stock Transfer Act, the contract relationship between appellee corporations and their stockholders require the surrender of the certificates before transfer is made.
 

 Section 8623-12, General Code, provides that a corporation may adopt a code of regulations.
 

 In the case of
 
 State, ex rel. Schwab, Pros. Atty.,
 
 v.
 
 Price,
 
 121 Ohio St., 114, 167 N. E., 366, 63 A. L. R., 1100, this court held:
 

 “The rules and regulations of an Ohio corporation, not in contravention of any statutory provisions, have all the force of contracts as between the corporation and its members and as between the members themselves.
 

 In the case of
 
 Geiger
 
 v.
 
 American Seeding Machine Co.,
 
 124 Ohio St., 222, 177 N. E., 594, 79 A. L. R., 614, it was held:
 

 “A stock certificate issued by a corporation is a contract between the corporation and the holders of certificates of all classes of stock. * * *”
 

 See, also,
 
 Johnson
 
 v.
 
 Lamprecht, 11,
 
 133 Ohio St., 567, 573, 15 N. E. (2d), 127.
 

 In Section 8623-31, General Code, is the following-provision :
 

 “ * * * No restriction of the right to transfer shares and no reservation of lien thereon shall be effective against a transferee of such shares
 
 unless stated, on the certificate.
 

 “Certificates for shares and the shares represented thereby shall be transferable on the books of the cor
 
 *279
 
 poration
 
 in such manner as the articles or regulations may provide,
 
 not inconsistent with the Uniform Stock Transfer Act [Section 8673-1
 
 et seq.,
 
 General Code] or other statutory provisions existing at the time of the transfer.” (Italics ours.)
 

 Section 8623-32, General Code, authorizes a corporation to appoint transfer agents and registrars whose duties and liabilities are to be fixed by contract. The several transfer agents and registrars (were made defendants below and are here as appellees.
 

 Appellee Eaton Manufacturing Company’s exhibit (defendant’s exhibit No. 2) contains the resolution appointing appellee The Cleveland Trust Company .as transfer agent. Such transfer agent is authorized “to make transfers * # * of certificates for # * * shares * * * now or presently to be outstanding as may be surrendered for transfer properly endorsed” and “Seventh” that “the registrars be and they are hereby authorized and directed to register transfers from time to time of certificates for such capital stock, upon the cancellation of certificates for a like amount of shares of the same class. * * *”
 

 Likewise, the regulations of appellee The. Republic Stamping and Enameling Company require “surrender of the duly endorsed certificate or certificates” before transfer.
 

 Printed upon each of the certificates is the following:
 

 “Transferable only upon the books of the company by the owner in person or by attorney, upon surrender of this certificate properly assigned.” This applies also to the certificates of the appellee Harbauer Company.
 

 Appellant is as much bound by the regulations of the several corporations as was his father through whom he claims. Therefore, if it were to be held that the instant case is one not provided, for within the purview of Section 8673-18, General Code, under the
 
 *280
 
 rules of law as to contract and of equity and law as toestoppel, appellant would be entitled to no relief in the instant case.
 

 The liability of' the corporation for transferring-shares without the surrender of the outstanding certificate is illustrated by the syllabus of
 
 Cleveland & Mahoning Rd. Co.
 
 v.
 
 Robbins et al., Admrs.,
 
 35 Ohio St., 483,
 
 viz.:
 

 “On the 9th of September, 1854, the Cleveland and Mahoning Railroad Company issued to Y. certificates of its capital stock. The certificates declared upon their face that the stock was transferable on the books of the company upon the surrender of the certificates.. On the 16th of September, 1854, the stock was sold to F. by V., who delivered to him the certificates with blank powers of attorney to enable him to have the stock transferred. The certificates were mislaid by F., and were not discovered until December, 1871. In the meantime, on May 8, 1863, the board of directors of the railroad company, on the application of V., issued to B.'& P.j to whom Y. assumed to sell the stock, new certificates of stock, on the supposition that the original certificates had been lost by V. On the application of the administrators of F. for a transfer of the stock to their names, and for an account of the-dividends, the company refused the application, on the ground of the issue of the new certificates to B. & P. The by-laws provided that no new certificates should be issued in place of any certificate previously issued,, until such previous certificate was surrendered and cancelled. There was also provision in the by-laws, that certificates might be issued on the special order of the board of directors, in the place of certificates lost or destroyed, on proof of such loss and destruction,, and on receiving security to indemnify the company against loss consequent upon the issuing of such new certificates. Held:
 

 
 *281
 
 “1. The issuing of the new certificates to B. & P., and the allowing the transfer of the stock to them, was a breach of the duty which the company owed to F., as the holder of the original certificates, and this breach of duty created a liability on the company to replace the stock to which F. was entitled, or to account for its valué.
 

 “2. The issuing of the certificates under the by-law providing for the issue of certificates in place of such as may have been lost or destroyed, does not affect the liability of the company to F., as the holder of the original certificates. The object of the by-law is to enable persons whose certificates appear to have been lost or destroyed, to obtain others, on indemnifying the company against loss, in case other parties should assert rights against the company under the original certificates; but does not affect the rights of such parties.”
 

 Turning briefly to cases where the Uniform Stock Transfer Act was not involved:
 

 There have been cases ■ in which a court of equity, having all parties before it, has entered a decree which operated upon the title of stock and transferred it to a third person while the certificate was outstanding. Yet no such case, insofar as we have been able to find, has been decided where the Uniform Stock Transfer Act was applicable.
 

 Even in cases where the act did not apply and where a court of equity has ordered such transfer, under the weight of authority the corporation still remains liable to an innocent holder of the outstanding certificate. As stated in 6 Thompson on Corporations (3 Ed.), 298, Section 4423:
 

 “It seems that a transfer made under a decree of court will not conclude or otherwise affect the rights of a subsequent innocent purchaser where the outstanding certificate was not surrendered; and it has
 
 *282
 
 been held that he is not affected by the doctrine of
 
 lis pendens.”
 

 12 Fletcher Cyclopedia Corporations, 457, Section 5540, contains the following headnote:
 

 “If a corporation transfers and issues a new certificate without requiring the production of the outstanding certificate, it becomes liable to a holder in good faith of the outstanding certificate.”
 

 ' In the course of the section (5540, ibid) at page 460' it is said:
 

 “The fact that the corporation requires an indemnity bond before it will reissue the stock in no way affects the rights of the holder of the original certificate. Nor does it in any way relieve the corporation from the consequences of its fraudulent act, but is rather a confession that it is violating its obligation not to transfer the stock except on surrender of the certificate.” See, also, 2 Cook Corporations (8 Ed.),, 1327, Section 361.
 

 In the case of
 
 Joslyn
 
 v.
 
 St. Paul Distilling Co.,
 
 44 Minn., 183, 46 N. W., 337, decided prior to the enactment of the Uniform Stock Transfer Act, appears the following syllabus:
 

 “A stock certificate issued by a corporation having-power so to issue, in which it is stated that a designated person is the owner of a certain number of shares of stock transferable only on the books of the associahyoojs oqj pos pun jojsuuij oj jq.§i¿' pun roAiod oqj suq oq juqj pun ‘pojuuSisop uosjod oqj jo Xj.iodo.id oqj qju qoojs jo soiuqs oqj juqj ppiOA\ ymoiouitnoo oqj oj oounrussu ue si ojnoqijioo u qong -poropuoirns jsjp si ojuoijijroo oqj ssopm sqooq sji uodn qoojs oqj jojsuujj jou piA\ uoiju.iod.ioo oqj juqj pun ‘qoojs oqj jo diqs -i0uaao oqj oj su uoijuruirpu Sumuijuoo u si ‘jjosji ojuo -qijjoo oqj jo .lopuoi.ius pun juoutosiopui oqj uo ‘uotj until this power and right has been lawfully terminated.” See, also, 12 Fletcher Cyclopedia Corpora
 
 *283
 
 tions, 446, Section 5537; 61 A. L. R., 436, note;
 
 Keller
 
 v.
 
 Eureka Brick Mach. Mfg. Co.,
 
 43 Mo. App., 84, 11 L. R. A., 472.
 

 While Fletcher at the end of Section 5537,
 
 ibid,
 
 says: “Of course, if the .transferee agrees to indemnify the company against the event of the original certificate turning up in the hands of a
 
 bona fide
 
 purchaser, it may be compelled to make the transfer,” the author is not here considering any provision of the Uniform Stock Transfer Act. Besides the only authority cited for the statement is the case of
 
 Wilson
 
 v.
 
 Atlantic & St. L. Rd. Co.,
 
 2 F., 459, decided by a district court in 1880, long prior to' the enactment by any state of the Uniform Stock Transfer Act. That case involved the demand by a trustee in bankruptcy followed by the tendering of a bond of sufficient indemnity.
 

 An instructive case in this connection, and one in which the court did not find it necessary to come to a conclusion upon the question whether the Uniform Stock Transfer Act did or did not govern the decision, is
 
 Parkhurst et al., Exrs.,
 
 v.
 
 Almy,
 
 222 Mass., 27, 109 N. E., 733. In that case it was sought to compel a corporation to issue certificates of .corporate stock in lieu of the certificates theretofore issued in the name of a debtor prior to the passage of the Uniform Stock Transfer Act. It was suggested that the creditor in that case might procure an equal number of shares and hypothecate them for the protection of the corporation and the possible purchaser of the debtor’s certificates. In the course of the opinion it was said:
 

 “A corporation has no right to make an over-issue of its capital stock, and a court has no power to give it a right to do so. A decree in the form set forth in the report seems to undertake to proceed upon the basis that it has such a right in providing that upon the issue of certificates to a special master in lieu of the
 
 *284
 
 certificates now standing in the name of William F. Almy ‘ such corporations shall be discharged and released from all liability by reason of the outstanding certificates in the name of said William P. Almy,’ provided the plaintiffs give to each of the corporations a bond ‘conditioned to hold such corporations harmless from all claims of any person or corporation establishing by and through the outstanding certificates in the name of William R. Almy a title legally and equitably paramount to the title obtained by the purchaser of the certificates sold by- the special master héreunder. ’ ' ■
 

 “If it were established that Almy was now the owner of the shares which stand on the books of the corporation in his name, and also that no one could become entitled to them hereafter, there would be no objection to the clause in the decree which provides that upon the issue of certificates to the special master in lieu of the certificates now outstanding in the name of William P. Almy, ‘such corporations shall be discharged and released from all liability by reason of the outstanding certificates in the name of said William P. Almy.’ But neither one of these two propositions is established. If the certificates for these shares have been transferred already to a
 
 bona fide
 
 purchaser for value without notice the title to the shares is in the transferee of these certificates.
 
 Athol Savings Bank
 
 v.
 
 Bennett,
 
 203 Mass., 480;
 
 Clews
 
 v.
 
 Friedman,
 
 182 Mass., 555. Even if the title to thése shares is now in Almy, it would pass from him if certificates for these shares hereafter should be transferred by him to a
 
 bona fide
 
 purchaser for value without notice.
 
 Athol Savings Bank
 
 v.
 
 Bennett, Clews
 
 v.
 
 Friedman, supra.
 

 “As we construe the decree it (in effect) takes away these shares from the true owners of them (in case the certificates for them already have been or shall be hereafter transferred by Almy to a
 
 bona fide
 
 purchaser for
 
 *285
 
 value without notice) and it substitutes for the shares rights of action against the corporations. But that is something which the court has no power to do. A court has no power to take away from the owner his property in shares in the capital stock of a corporation and substitute for that property a right of action against the corporation. It has no more power to take away shares belonging to a
 
 bona fide
 
 purchaser of Almy’s certificates on substituting therefor a right of action against the corporation (even although the right of action is made good by a bond with sufficient sureties) than it has to take away from the owner of them his property in other shares in the capital stock of a corporation.”
 

 As counsel for appellant frankly admit , that they have been unable to find any case directly in point, it will be unnecessary to discuss all of the cases cited in their brief. However, attention should be called to the case of
 
 Central Mortgage Co.
 
 v.
 
 Buff,
 
 278 Mass., 233, 179 N. E., 628, which appellant claims: “Was decided under the Uniform Stock Transfer Act of Massachusetts and in which it was held that a creditor could subject shares of stock of the debtor in a corporation although he was not in possession of the certificate for the shares at the time.”
 

 The action in that case arose under a section of the Massachusetts laws other than the Uniform Stock Transfer Act. The court said at page 237:
 

 ‘ ‘ The statute under which the plaintiff is proceeding does not require it to prove that the certificates for the shares of the debtor are in his possession.”
 

 The following is the only mention of the act by the court at the close of its opinion:
 

 “The provisions of the Uniform Stock Transfer Act do not require a different conclusion.”
 

 The case of
 
 Columbia Brewing Co.
 
 v.
 
 Miller,
 
 281 F., 289, arose under the Trading with the Enemy Act of
 
 *286
 
 November 4, 1918, requiring corporations under prescribed conditions to cancel outstanding shares of stock and in lieu thereof to issue certificates to the alien property custodian. However, it was also said in that case that:
 

 “ * * * but such transfer does not deprive any non-enemy claimant of vested rights, which may be established by proceeding under Section 9 of the act, as amended.”
 

 Appellant’s quotation from 6 Thompson Corporations, 298, to the effect that: “ * * * a court of equity, having all proper parties before it, may enter a decree that will operate upon the title of the stock and transfer it to a third person, while the certificate is outstanding” is preceded in the text by the words “On the other hand, it has been held that.” This exception to the general rule stated earlier in the same section is based upon the case of
 
 Sprague
 
 v.
 
 Cocheco Mfg. Co.,
 
 10 Blatch., 173, 22 Fed. Cas., 13249, decided by United States District Court in 1872. It is also cited by appellant. The decision involved a Massachusetts trusteeship of the stock of a Massachusetts corporation. The decision is not only contrary to the Uniform Stock Transfer Act but to the modern Massachusetts cases.
 

 . The question as to the right of appellant to dividends has not been argued, though assigned as error. The right to dividends follows the right to have the stock transferred. Sections 8623-33a and 8673-3, General Code.
 

 We find no error in the judgment of the Court of Appeals and therefore such judgment should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Williams, JJ., concur.