Argued January 19, affirmed February 2, 1955

# NEVAEL INVESTMENT CORPORATION *v.*
## SCHRUNK and SMYTHE
279 P. 2d 518

*James H. Ganoe,* Portland, argued the cause for appellant. On the brief were Millen F. Kneeland, Maurice C. Corcoran and Gale M. Lockhart, Jr., Portland.

*Kermit Smith,* Portland, argued the cause for intervenor-respondent. With him on the brief were Linus M. Fuller and Virgil Crum, Portland.

LATOURETTE, J.

This is a replevin action brought by Nevael Investment Corporation against Terry D. Schrunk, Sheriff, to recover certain stock in the West Coast Burner & Furnace Company held by the sheriff under attachment and subsequent judgment execution. Since Hilja Smythe was the attaching creditor she was permitted to intervene as a defendant in the present action. The court heard the case, a jury being waived, and found for defendants. Plaintiff appeals. The main points in the case concern the validity of the attachment and plaintiff's title to the stock.

On May 24, 1949, Bert E. Shipp, Arthur B. Greenup and James L. Evans entered into an escrow agreement in contemplation of Evans selling Shipp and Greenup certain stock in the South Pacific Corporation whereby Shipp and Greenup deposited with the First National Bank of Portland 1193 shares of unendorsed stock of the West Coast Burner & Furnace Company, being the stock under attachment. Under the escrow, if and when $14,500 was turned over to the bank and was

ordered paid to Evans, the stock should be returned to Shipp and Greenup. In any event, the stock was to be returned not later than June 1, 1950.

On June 6, 1949, Tyne M. Lindberg sold to Evans, Shipp and Greenup the stock in the South Pacific Corporation for $15,000 for which they paid $500 in cash and executed a promissory note to Tyne M. Lindberg for the sum of $14,500, payable December 6, 1949. On the same date Evans assigned his interest in the escrow to Tyne M. Lindberg with written approval of Shipp and Greenup. On March 1, 1950, Evans and Shipp organized the Forward Club, a charitable organization, the main purpose being ''to band its members together for the purpose of studying and informing themselves and making that information available to others, relative to the cultural, economic and business conditions of the various countries of the world and promoting interchange of ideas between these countries.'' After the note became due and on March 16, 1950, Shipp and Greenup, by written assignment, transferred the Burner stock held under escrow by the bank to the Forward Club. Notice of such assignment was thereupon given to the bank. On May 5, 1950, Tyne L. Lindberg assigned the note and escrow to Hilja Smythe, her daughter. On May 31, 1950, action was brought by her on the note. Attachment proceedings were had wherein the sheriff levied on the stock held by the bank under escrow. Thereupon the Forward Club filed a third party claim against the sheriff claiming title to the stock. This matter was heard before the Honorable James W. Crawford, Judge, who denied the claim and ordered the bank to turn the stock over to the sheriff, which was done. The Forward Club, after attachment, assigned the stock in question to the Nevael Investment Corporation, plaintiff.

Plaintiff first claims that the attachment was ineffective because service of garnishment was not made on the officers of the West Coast Burner & Furnace Company in compliance with § 7-206, OCLA, ORS 29.170. The Uniform Stock Transfer Act, § 78-113, OCLA, ORS 58.130, sets out the procedure for attachment where corporate stock is involved. Referring to the above section Mr. Justice BAILEY, speaking for the court in *Hodes v. Hodes,* 176 Or 102, 155 P2d 564, had this to say:

"Whether or not the plaintiff's shares of stock are subject to attachment and sale on execution is governed by § 78-113, O.C.L.A. (§ 13 of the uniform stock transfer act), * * * * *

"Three alternative means are specified in the section last quoted for making effective an attachment or levy on stock, to wit: (1) by actual seizure of the certificate; (2) by surrender of the certificate to the corporation which issued it; and (3) by enjoining the holder from transferring it. * * *"

■ Since the stock was seized by the sheriff under the attachment it was unnecessary to give notice to the West Coast Burner & Furnace Company.

■ It is urged by the intervenor, Hilja Smythe, that since the Forward Club failed in its third party claim against the sheriff, plaintiff, the successor in interest to the Forward Club, is barred from bringing this action under the doctrine of res judicata. We have held in a number of cases that a defeated third party claimant is not barred from bringing a subsequent replevin action against the sheriff. See *Matsuda v. Noble,* 184 Or 686, 705, 200 P2d 962.

■ It is next argued by defendants that the transfer of the stock from Shipp and Greenup to the Forward

Club was invalid on account of noncompliance with the following statute:

> "Title to a certificate and to the shares represented thereby can be transferred only:

> "(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or (b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.

> "* * * * *" § 78-101, OCLA, ORS 58.010.

Concerning the Uniform Stock Transfer Act we read in 18 CJS 929, Corporations, § 392, as follows:

> "The Uniform Stock Transfer Act governs the transfer of title in adopting states in corporations of those states and of other states having laws consistent with it. Under the provision of the act, *the only ways* in which legal title to certificates and shares of stock can be transferred are by *delivery of the certificate* indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or by *delivery of the certificate* and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby, which assignment or power of attorney may be either in blank or to a specific person. * * *" Italics ours.

And again in 13 Am Jur 416, § 343, Corporations, we read as follows:

"In the absence of contrary statutory requirements, a delivery of a stock certificate to the purchaser is not essential to a transfer of shares of stock which may be affected by the execution and delivery of a separate instrument. Under the Uniform Stock Transfer Act, however, delivery of the certificate is essential to a transfer of the legal title to stock. An attempted transfer of title without delivery of the certificate has, under that act, only the effect of a promise to transfer; the obligation, if any, imposed by such promise is to be determined by the law governing the formation and performance of contracts."

In *Knight v. Shutz,* 141 Ohio St 267, 47 NE2d 886, it is said:

"The title to a stock certificate and the shares represented thereby can be transferred only by delivery of the certificate properly endorsed or accompanied by a separate document containing a written assignment or a power of attorney to assign or transfer the certificate or the shares represented thereby. Section 8673-1, General Code."

Since the stock in question was in the possession of the bank under the escrow agreement, it is obvious that the delivery of the same was not made to the Forward Club when the assignment to it was executed. Where a transfer of stock is attempted without delivery provision is made by § 78-110, OCLA, ORS 58.100, for the protection of the transferee as follows:

"An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."

It is therefore seen in the instant case that the written assignment of the stock to the Forward Club created no more than a promise to transfer.

There is no evidence in the case that Hilja Smythe had any notice of such written assignment prior to the attachment. Under § 7-207, OCLA, ORS 29.150, Hilja Smythe, the attaching creditor, became an innocent purchaser for value and her rights to such stock under the attachment took precedence over the claim of the Forward Club and its successor in interest, the plaintiff.

Affirmed.