[Cite as *Westbrook v. Swiatek*, 2012-Ohio-2451.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WILLIAM WESTBROOK | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 11-CAE-09-0080 |
| VALERIE SWIATEK, ET AL., | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Delaware County Court of Common Pleas, Case No. 06 CV H 08 0683

JUDGMENT:    AFFIRMED

DATE OF JUDGMENT ENTRY:    May 30, 2012

APPEARANCES:

For Appellants:

QUINTIN F. LINDSMITH
NATALIE T. FURNISS
JAMES P. SCHUCK
100 S. Third St.
Columbus, OH 43215

For Appellee:

O. JUDSON SCHEAF, III
10 W. Broad St., Suite 700
Columbus, OH 43215

ANTHONY M. HEALD
125 N. Sandusky St.
Delaware, OH 43015

*Delaney, P.J.*

{¶1}  Defendants-Appellants Alum Creek, Inc., Rennob, Inc., and Whittington, Inc. appeal the August 18, 2011 and September 15, 2011 judgment entries of the Delaware County Court of Common Pleas granting indemnification of fees and expenses to Plaintiff-Appellee William Westbrook.

## FACTS AND PROCEDURAL HISTORY

{¶2}  This matter was originally filed on August 1, 2006 by Westbrook as an action, for among other things, an accounting and dissolution of a "joint venture/partnership agreement" between himself and Valerie Swiatek, Victoria Bonner, Deborah Bonner ("Bonner Daughters"), ABL Group, Ltd., Alum Creek, Inc., Cobbleton Bachman LLC, Cobbleton II LLC, Rennob, Inc., SR 37 at Old State LLC, and Whittington, Inc. ("Bonner Companies").  Westbrook alleged a written "Memo of Understanding" ("MOU") memorialized the joint venture/partnership agreement.  The MOU was between Westbrook and Charles Bonner.  The MOU was signed by Westbrook and Bonner in their individual capacities on June 24, 1999.

{¶3}  The general terms of the MOU were such that Mr. Bonner, either individually or through one of several Bonner Companies (referred to as Bonner Interests in the MOU), would provide the financing for the purchase of property found by and to be developed by Westbrook.  The pertinent terms of the MOU were as follows: Pursuant to the "Standard Deal," wherein Westbrook would receive 30% of the profits, the Bonner Companies would receive 65% and Michael Suhovecky (Mr. Bonner's accountant) would receive 5%.  A losing transaction would result in zero gain or loss to Westbrook.  On "Sour Deals" where there was money fronted but no deal made, the

Bonner Companies would take 100% of the loss. Mr. Bonner could continue to do deals on his own, with or without Westbrook. Mr. Bonner provided Westbrook with administrative support such as office space and accounting services. Westbrook was considered an employee of one of the Bonner Companies to the extent necessary to qualify Westbrook under the corporation's health coverage plan. "The remainder of his status will be an independent contractor, associate, officer and/or partner depending on the particulars of each deal." (MOU, Working Relationship.) Westbrook also served as an officer of various Bonner Companies. Westbrook was the president of Alum Creek, Inc., vice president of Whittington, Inc., and vice president of Rennob, Inc. (Bonner Companies Amended Counterclaim, August 8, 2007.)

{¶4} Westbrook and Mr. Bonner operated under the terms of the MOU until Mr. Bonner's death in September 2003. Before his death, Mr. Bonner reorganized the Bonner Companies' boards of directors and appointed the Bonner Daughters to the boards in addition to three outside directors. Westbrook continued working on the pending real estate projects after Mr. Bonner died. According to the complaint, these projects include the Cobbleton Property, the Hummel Property, Woods at Cumberland, McCammon Chase Property, Lithopolis Property, Huntley Property, and Noble Property.

{¶5} In mid-2005, the relationship between the parties deteriorated. On June 25, 2005, Westbrook was informed that the Bonner Daughters intended to downsize the active real estate development operations of the Bonner Companies and the MOU was terminated with respect to the current projects, except the Cobbleton and Huntley properties. In September 2006, Westbrook was informed he was no longer authorized to act in any representative capacity on either the Cobbleton or Huntley properties.

{¶6} Shortly thereafter, this litigation ensued in the Delaware County Court of Common Pleas. After the filing of the original complaint, Westbrook sought the appointment of a receiver. The trial court appointed a receiver in June 2007. However, the appointment was vacated by this Court on December 10, 2008, in *Westbrook v. Swiatek,* 5th Dist. Nos. 07 CAE 09 0046, 07 CAE 11 0058, 2008-Ohio-6477 ("*Westbrook I*"). The Ohio Supreme Court declined jurisdiction to hear the case on April 22, 2009.

{¶7} In the meantime, the litigation continued between the parties. In 2007, the Bonner Companies asserted counterclaims against Westbrook. ABL Group, Alum Creek, Cobbleton I and II, Whittington, and Rennob asserted the following claims: (1) slander of title for Westbrook's initiation of the lawsuit claiming an ownership right in the real estate parcels comprising the Cobbleton property; (2) declaratory judgment that the Bonner Companies are the owners to the exclusion of Westbrook of the real estate parcels comprising the Cobbleton property; and (3) negligence of the Westbrook in performing his task of preparing the real estate parcels comprising the Cobbleton property for development and/or sale. On July 2, 2007, the trial court granted Westbrook's motion to dismiss count one of the Bobber Companies' counterclaims. On August 8, 2007, the Bonner Companies filed amended counterclaims asserting the following claims: (1) declaratory judgment that the corporate defendants are the owners to the exclusion of Westbrook of the Cobbleton property; (2) breach of fiduciary duty by Westbrook to the Bonner Companies by concealing his positions; (3) breach of contract as to sour deals by failing to allow the defendants to treat Cobbleton as a sour deal and allow the defendants to sell the property to recover expenses; and (4) breach of

fiduciary duty by Westbrook by failing to perform his obligations as project manager to assure that the contingencies in the Dominion contract would be met.

{¶8} On August 9, 2007, Westbrook filed an amended complaint adding claims for indemnification and advancement of legal expenses for defense of the counterclaims. The corporate regulations of Alum Creek, Rennob, and Whittington provided for indemnification and advancement of attorney's fees and expenses as follows:

Section 5.01. Indemnification. The corporation shall indemnify any officer or director of the corporation who was or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (including, without limitation, any action threatened or instituted by or in the right of the corporation), by reason of the fact that he is or was a director, officer, employee, agent or volunteer of the corporation, or is or was serving at the request of the corporation as a director, trustee, officer, employee, member, manager, agent or volunteer of another corporation (domestic or foreign, nonprofit or for profit), limited liability company, partnership, joint venture, trust or other enterprise, against expenses (including, without limitation, attorneys' fees, filing fees, court reporters' fees and transcript costs), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if his act or omission giving rise to any claim for indemnification under this Section 5.01 was not occasioned by

his intent to cause injury to the corporation or by his reckless disregard for the best interests of the corporation, and in respect of any criminal action or proceeding, he had no reasonable cause to believe his conduct was unlawful. It shall be presumed that no act or omission of a person claiming indemnification under this Section 5.01 that gives rise to such claim was occasioned by an intent to cause injury to the corporation or by a reckless disregard for the best interests of the corporation and, in respect of any criminal matter, that such person had no reasonable cause to believe his conduct was unlawful; the presumption recited in this Section 5.01 can be rebutted only by clear and convincing evidence, and the termination of any action, suit or proceeding by judgment, order, settlement or conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, rebut such presumption. * * *

Section 5.05. Advances for Expenses. The provisions of Section 1701.13(E)(5)(a) of the Ohio Revised Code do not apply to the corporation. Expenses (including without limitation, attorneys' fees, filing fees, court reporters' fees and transcript costs) incurred in defending any action, suit or proceeding referred to in Section 5.01 shall be paid by the corporation in advance of the final disposition of such action, suit or proceeding to or on behalf of the officer or director promptly as such expenses are incurred by him, but only if such officer or director shall first agree, in writing, to repay all amounts so paid in respect of any claim, issue or other matter asserted in such action, suit or proceeding in

defense of which he shall not have been successful on the merits or otherwise if it is proved by clear and convincing evidence in a court of competent jurisdiction that, in respect of any such claim, issue or other matter, his relevant action or failure to act was occasioned by his deliberate intent to cause injury to the corporation or his reckless disregard for the best interests of the corporation, unless, and only to the extent that, the Court of Common Pleas of Delaware County, Ohio or the court in which such action or suit was brought shall determine upon application that, despite such determination, and in view of all of the circumstances, he is fairly and reasonably entitled to all or part of such indemnification.

{¶9} On August 8, 2007, the Bonner Companies filed a separate suit in Franklin County Court of Common Pleas against Westbrook and Mr. Suhovecky, in their role as corporate officers and asserted claims of fraud, breach of contract and breach of fiduciary duty. Ultimately, that suit was transferred and consolidated with this action in Delaware County.

{¶10} Westbrook filed a motion on August 28, 2007 requesting a hearing on the "Interim Award of Legal Fees." Westbrook argued he was due the advancement of his attorney's fees and expenses under the corporate regulations of Alum Creek, Rennob, and Whittington. On October 2, 2008, the trial court granted Westbrook's motion. The trial court, citing law from the State of Delaware, noted that the construction and interpretation of the corporate regulations is a question of law. Second, the trial court determined that whether a corporate official is entitled to

advancement of legal expenses can be brought before the court by motion. The trial court proceeded to examine the corporate regulations and Ohio law, specifically R.C. 1701.13(E), which permits an Ohio corporation to establish indemnification and advancement provisions for its officers and directors. The trial court concluded that Westbrook was entitled to advancement of attorney fees and expenses from the corporations.

{¶11} On August 12, 2008, ABL Group, Cobbleton I and II, and Rennob filed a second amended counterclaim asserting the following claims: (1) declaratory judgment that the corporate defendants are the owners to the exclusion of Westbrook of the Cobbleton property and declaratory judgment that Defendant SR 37 at Old State is the owner of the Huntley property; (2) breach of contract as to sour deals by failing to allow the defendants to treat Cobbleton as a sour deal and allow the defendants to sell the property to recover expenses; (3) breach of fiduciary duty by Westbrook to purported partnership by failing to perform his obligations as project manager; (4) breach of fiduciary duty by Westbrook by taking action to cause the collapse of the sale of 63 units of Cobbleton property to Dominion for $637,000 in September 2007; and (5) tortious interference with contract by taking action to cause the collapse of the sale of 63 units of the Cobbleton property to Dominion. The August 12, 2008 second amended counterclaim withdrew the officer-based claim of breach of fiduciary duty.

{¶12} On October 31, 2008, the Bonner Companies voluntarily dismissed without prejudice the other officer-related counterclaims.

{¶13} The trial court held a hearing on November 5, 2008 to determine the amount of legal expenses to be advanced by the corporations. By entry filed

December 10, 2008, the trial court awarded $227,975.75 in attorney's fees and $12,976.31 in expenses to Westbrook. The Bonner Companies were ordered to pay these amounts by January 12, 2009. The trial court deferred the final hearing on indemnification until after the trial occurred in the case.

{¶14} The Bonner Companies appealed the award to this court, which dismissed the appeal for lack of a final, appealable order. The Ohio Supreme Court declined jurisdiction to hear the case.

{¶15} Ultimately, the Bonner Companies refused to pay the advancement and were found in contempt of court. In their appeal of the contempt order, the Bonner Companies raised four assignments of error. Relevant to this appeal, the Bonner Companies argued in their first assignment of error the trial court erred in awarding fees and expenses because Westbrook presented limited evidence at the advancement hearing. The third assignment of error stated the trial court erred in finding the Bonner Companies were in contempt because the advancement order was erroneously issued. We affirmed the trial court's decision to find the Bonner Companies were in contempt in *Westbrook v. Swiatek*, 5th Dist. No. 2009 CAE 05 0048, 2010-Ohio-2868 ("*Westbrook II*"). The Ohio Supreme Court declined jurisdiction to hear the case.

{¶16} Westbrook filed a second amended complaint on February 12, 2008. Count ten of the complaint requested indemnification and contribution from Valerie Swiatek only pursuant to common law and statute. In count eleven, Westbrook requested contractual indemnification against Alum Creek, Rennob, and Whittington pursuant to the corporate regulation Section 5.01.

{¶17} The Bonner Daughters and the Bonner Companies filed a motion for summary judgment as to all claims asserted by Westbrook. The trial court granted summary judgment in favor of the Bonner Daughters and the Bonner Companies as to twelve counts of Westbrook's second amended complaint. The trial court denied summary judgment as to breach of contract against the Bonner Daughters, indemnification against Valerie Swiatek, and indemnification against Alum Creek, Rennob, and Whittington. The indemnification claims were reserved for hearing after a trial on the merits on the remaining breach of contract cause of action.

{¶18} The claim of breach of contract against the Bonner Daughters proceeded to a jury trial. The trial court granted the Bonner Daughters' motion for directed verdict pursuant to Civ.R. 50(A) and entered judgment in their favor.

{¶19} Westbrook appealed the disposition of his claims against the Bonner Daughters and the Bonner Companies in *Westbrook v. Swiatek*, 5th Dist. No. 09 CAE 09 0083, 2011-Ohio-781 ("*Westbrook III*"). This court affirmed the decisions on February 14, 2011.

{¶20} On April 28, 2011, the trial court held a hearing on Westbrook's claim for indemnification against Alum Creek, Rennob, and Whittington. At the hearing, only three witnesses testified: John McDonald, Westbrook's expert; Jud Scheaf, Westbrook's attorney; and Anthony Heald, Westbrook's attorney. The parties filed pre-hearing and post-hearing briefs.

{¶21} Upon consideration of the evidence presented at the hearing and the briefs, the trial court issued its decision on August 17, 2011 to award Westbrook indemnification of litigation expenses in the amount of $453,374.04, plus post-

judgment interest and pre-judgment interest in the amount of $40,514.27. The trial court previously awarded Westbrook advancement of expenses on December 10, 2008 and February 14, 2011 in the amount of $391,362.31. The trial court ordered Alum Creek, Rennob, and Whittington to immediately pay Westbrook $102,526.

{¶22} Upon motion of Alum Creek, Rennob, and Whittington, the trial court amended the August 18, 2011 judgment entry to delete the statement that the parties were to immediately pay Westbrook. Instead, the trial court granted a judgment for Westbrook and against Alum Creek, Rennob, and Whittington as to Count 11 of Westbrook's complaint in the amount of $102,526.

{¶23} It is from this judgment Alum Creek, Rennob, and Whittington now appeal.

## ASSIGNMENTS OF ERROR

{¶24} Alum Creek, Rennob, and Whittington raise three Assignments of Error:

{¶25} "I. THE TRIAL COURT ERRED IN AWARDING WESTBROOK INDEMNIFICATION FOR FEES AND EXPENSES HE INCURRED IN RESPONSE TO CLAIMS BROUGHT BY COMPANIES THAT HAD NO INDEMNIFICATION BYLAWS AND FOR CLAIMS THAT HAD NOTHING TO DO WITH HIS FORMER POSITION AS AN OFFICER THEREBY FAILING TO ALLOCATE BETWEEN 'COVERED' AND 'NON-COVERED' CLAIMS.

{¶26} "II. THE TRIAL COURT ERRED IN MAKING A FACTUAL FINDING 'THAT ALL OF THE COUNTERCLAIMS AROSE 'BY REASON OF THE FACT' THAT THE PLAINTIFF SERVED AS A DIRECTOR, OFFICER…OF THE CORPORATION"

WHERE THE PLAINTIFF PRESENTED NO SUCH EVIDENCE AND COUNSEL'S TESTIMONY ESTABLISHED THE OPPOSITE.

{¶27} "III. THE TRIAL COURT ERRED IN THE CALCULATION OF PRE-JUDGMENT AND POST-JUDGMENT INTEREST WHICH WAS BASED UPON AN UNDERLYING FEE AWARD THAT WAS EXCESSIVE."

**ANALYSIS**

**I., II.**

{¶28} For ease of discussion, we consider the first and second Assignments of Error together. Alum Creek, Rennob, and Whittington argue in their first Assignment of Error the trial court erred in failing to allocate between covered and non-covered counterclaims when it granted Westbrook indemnification for attorney's fees and expenses based his defense against all the counterclaims raised by the Bonner Companies. The parties contend in their second Assignment of Error, that Westbrook failed to establish the counterclaims arose by reason of the fact he was an officer or director of Alum Creek, Rennob, and Whittington. For the reasons that follow, we disagree.

{¶29} Westbrook is a former officer of Alum Creek, Rennob, and Whittington. Alum Creek, Rennob, and Whittington are governed by corporate bylaws providing for advancement and indemnification of attorney's fees and expenses if the officer or director is a party to a civil action by reason of the fact that he is or was a director, officer, employee, agent, or volunteer of the corporation.

{¶30} In this case, ABL Group, Alum Creek, Cobbleton I and II, Whittington, and Rennob brought counterclaims against Westbrook. The trial court found in its

August 18, 2011 judgment entry granting indemnification that the parties agreed Westbrook was entitled to indemnification for his fees and expenses incurred in defending the following counterclaims: (1) negligence claim asserted by Rennob; (2) breach of fiduciary duty claim in August 8, 2007 amended counterclaim; (3) fraud claim by Whittington; and (4) breach of fiduciary duty by Whittington. The remaining counterclaims were slander of title, contingent claim for breach of fiduciary duty to purported partnership, breach of fiduciary duty regarding Dominion sale, and tortious interference with contract regarding Dominion sale. The trial court held that all of the counterclaims arose "by reason of the fact" Westbrook was a director, officer, employee, agent, or volunteer of the corporation and were part of one action, suit, or proceeding. The trial court further determined the corporate regulations, authored by the corporate defendants, did not require the officer or director to separate the counterclaims. (Judgment Entry, Aug. 18, 2011.)

{¶31} Alum Creek, Rennob, and Whittington cite to the "law of allocation" to argue Westbrook was required to allocate his litigation expenses for his defense of the counterclaims between those brought by the companies not covered by the corporate bylaws and those brought by the companies with corporate bylaws providing for indemnification. Alum Creek, Rennob, and Whittington state the party seeking recovery of attorney fees must allocate between the covered and non-covered claims and a failure to meet this burden will result in a denial of an award of attorney's fees in its entirety. *See Abel v. Keybank, U.S.A., N.A.*, N.D.Ohio No. 03 CV 524, 2005 WL 2216938 (Sept. 12, 2005); *Inserra v. J.E.M. Bldg. Corp.*, 9th Dist. No. 2973-M, 2000 WL 1729480 (Nov. 22, 2000).

{¶32} This court reviewed the parties' "law of allocation" argument in *Westbrook II.* As stated in the facts above, Westbrook sought an advancement of the legal fees for his defense of the counterclaims of the Bonner Companies. Westbrook based his motion for advancement on Sec. 5.05 of the corporate bylaws. The trial court awarded Westbrook attorney's fees and expenses to be paid by January 12, 2009, but deferred the final hearing on indemnification until after the trial occurred in the case. The judgment was not paid and Westbrook filed a motion to show cause. The trial court sustained Westbrook's show cause motion.

{¶33} Valerie Swiatek, Victoria Bonner, Deborah Boner, Whittington, Alum Creek, Rennob, and ABL Group appealed the contempt judgment in *Westbrook II.* While the parties raised assignments of error as to the law of contempt, the parties argued in their first and third assignments of error the basis of the trial court's contempt finding, the advancement order, was in error.

{¶34} The first assignment of error contended there was no evidence Westbrook was entitled to the advancement of fees and expenses. In support of the argument, the parties stated, "[p]laintiff submitted no evidence of allocation between 'covered' and 'non-covered' claims." The parties argued that only four counterclaims were covered by the advancement and indemnification provisions of the corporate bylaws. When Westbrook requested the advancement of his attorney's fees and expenses pursuant to the corporate bylaws, he was required to allocate between the covered and non-covered counterclaims.

{¶35} In reviewing the parties' arguments in *Westbrook II*, we analyzed advancement and indemnification provisions as provided by statute and by the corporate bylaws. We stated:

R.C. 1701.13(E)(2) provides for indemnification of corporate officers. It states:

A corporation may indemnify or agree to indemnify any person who was or is party ... to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor, by reason of the fact that he is or was a director, officer, employee, or agent of the corporation ... against expenses, including attorney's fees, actually and reasonably incurred by him in connection with the defense or settlement of such action or suit, if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation ..."

The statute further provides that the corporation may agree to pay these fees and expenses in such proceedings "in advance of the final disposition of the action, suit or proceeding, as authorized by the directors in the specific case, upon receipt of an undertaking by or behalf of such ... officer ... to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the corporation." R.C. 1701.13(E)(5). This right is commonly referred to as "advancement."

Indemnification and advancement statutes were enacted to attract qualified candidates into corporate service by protecting their personal assets from depletion by litigation that results from that service and to develop sound corporate management. William Knepper & Dan Bailey, *Liability of Corporate Officers and Directors*, (7th ed.), Volume 2, Section 22.01. Advancement is a corollary remedy to indemnification by providing immediate funds to officers for ongoing litigation expenses, which may become significant, prior to the outcome on the merits. The right to indemnification or recoupment is established after the merits are determined by a jury or court. Under some circumstances, such as here, a corporation may be reluctant to advance funds to an officer who is perceived by the corporation as being unfaithful, or fear the funds will never be paid back.

Ohio law does not require corporations to provide indemnification or advancement: it just gives them the power to do so. It is undisputed that the corporate Appellants opted to do so in this case.

* * *

The Ohio Supreme Court has held that the rules and regulations of an Ohio corporation, not in contravention of any statutory provision, have the force of "contracts" as between the corporation and its members and as between the members themselves. *Knight v. Shutz* (1943) 141 Ohio St. 267, 47 N.E.2d 886, citing with approval *State ex.*

*Rel. Schwab, Pros. Atty., v. Price* (1929) 121 Ohio St. 114, 167 N.E. 366, syllabus.

Therefore, this is essentially a matter concerning the contractual interpretation of the indemnification and advancement provisions to be followed by the parties as set forth in the corporate regulations.

*Westbrook II*, 5th Dist. No. 2009 CAE 05 0048, 2010-Ohio-2868, ¶21-25, 28-29.

{¶36} Upon our review of the trial court's fee award and the arguments on appeal, we affirmed the trial court's decision to award Westbrook advancement of his fees and expenses.

{¶37} In the present appeal, Alum Creek, Rennob, and Whittington argue Westbrook's claim for indemnification must fail because he did not allocate between the covered and non-covered counterclaims. Westbrook counters this court should apply the law of the case doctrine to overrule the parties' first Assignment of Error because we have already examined and overruled the law of allocation argument as applied to Westbrook's claim for advancement in *Westbrook II*.

{¶38} In *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, the Ohio Supreme Court discussed the law of the case doctrine and stated as follows:

The law of the case is a longstanding doctrine in Ohio jurisprudence. "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d at 3, 11 OBR 1, 462

N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343.

*Hopkins*, ¶ 15.

{¶39} We do not find persuasive the argument that the law of the case doctrine resolves the issue. In *Westbrook II*, we stated, "[t]he Appellants' dismissal of the counterclaims did not convert the trial court's rulings into a ruling on Westbrook's claim for indemnification, which is a separate and distinct legal claim. In addition, the trial court stated: '[t]he Court hereby defers the final hearing on indemnification until after the trial occurs in this case.'" *Westbrook II*, 5th Dist. No. 2009 CAE 05 0048, 2010-Ohio-2868, ¶44.

{¶40} Indemnification is a separate and distinct legal claim from advancement, barring us from utilizing the law of the case doctrine. However, we find *Westbrook II* provides guidance in determining the applicability of the law of allocation to Westbrook's claim for indemnification.

{¶41} In this appeal, we have the same parties, the same corporate bylaws, and most significantly, the same counterclaims as those analyzed in *Westbrook II*. The parties in *Westbrook II* argued Westbrook was not entitled to advancement under the corporate bylaws because he did not allocate between the covered and non-covered counterclaims. The parties in the present appeal argue Westbrook is not entitled to indemnification because he did not allocate between the covered and non-

covered counterclaims. While indemnification is a separate and distinct legal claim, in this case, indemnification and advancement as provided for in the corporate bylaws are the opposite sides of the same coin.

{¶42} Based on the authority of *Westbrook II*, we find the trial court did not err in finding Westbrook was not required to allocate the counterclaims in order to be entitled to indemnification of his legal fees and expenses.

{¶43} As to the second Assignment of Error, we find this analysis to be applicable to the trial court's finding Westbrook was entitled to indemnification by reason of the fact he was a director, officer, employee, agent, or volunteer of the corporation.

{¶44} The first and second Assignments of Error of Alum Creek, Rennob, and Whittington are overruled.

III.

{¶45} Alum Creek, Rennob, and Whittington argue in their third Assignment of Error the trial court erred in awarding pre-judgment and post-judgment interest because the underlying award for indemnification was in error.

{¶46} Based upon our disposition of the first and second Assignments of Error, we overrule the third Assignment of Error.

**CONCLUSION**

{¶47} For the foregoing reasons, we overrule the first, second, and third Assignments of Error of Defendants-Appellants, Alum Creek, Rennob, and Whittington.

{¶48} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER


IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
| WILLIAM WESTBROOK | : | |
| Plaintiff - Appellee | : | JUDGMENT ENTRY |
| -vs- | : | |
| VALERIE SWIATEK, et al. | : | Case No.   11 CAE 09 0080 |

Defendants-Appellants   :
           :
           :

 For the reasons stated in our accompanying Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed.  Costs assessed to Appellants.


_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER